**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

UNITED STATES OF AMERICA

-vs-                                                                             Case No.:  2:07-cr-17-FtM-29SPC

CHARLES BYRD
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on the Defendant Charles Byrd's Motion to Suppress Identification (Doc. #21) filed on February 23, 2007.  On March 12, 2007, a hearing was held on the Motion before the Honorable Sheri Polster Chappell, United States Magistrate Judge.  At the hearing the Government was represented by Assistant United States Attorney, Douglas Malloy, and the Defendant was represented by Assistant Public Defender, Russ Rosenthal.  The Government called Collier County Sheriff's Office Investigator Margarette Nelson, and the Defendant did not call any witnesses, but submitted photographs of the apartment's exterior where the alleged narcotics transaction took place.

### TESTIMONY AND EVIDENCE

**Investigator Margarette Nelson**:

      Inv. Nelson has served with the Collier County Sheriff's Office since 1990.  She currently serves as a narcotics investigator in the Immokalee area. (Tr. 3:4-12).  Inv. Nelson testified that she has known the Defendant for at least three years.  Inv. Nelson made an undercover narcotics

purchase from the Defendant in 2004 and has maintained yearly contact with the Defendant up until 2006 which was the last time she purchased narcotics from him. (Tr. 3:20-25, 4:1-6).

On Thursday, November 2, 2006, Inv. Nelson and her confidential informant (CI) went to the Defendant's apartment to make a narcotics buy. (Tr. 4:19-24). Inv. Nelson testified that she knew the CI and that the CI was familiar with the Defendant. (Tr. 4:19-25, 5:1-7). Inv. Nelson and the CI went to the back window of the Defendant's apartment in Immokalee where the CI introduced her to the Defendant. (Tr. 5:8-15). The CI told the Defendant that Inv. Nelson wanted to buy $60.00 worth of cocaine. (Tr.5:13-15). Inv. Nelson testified that she could clearly see and recognize the Defendant from the back window of the apartment as Charles Byrd. (Tr. 5:13-25). At that point, Inv. Nelson and the CI went around to the front of the residence. (Tr. 6:18-25). The Defendant opened the front door and stood there while they made the transaction. (Tr. 6:20-23). Inv. Nelson stated that the transaction at the front door took less than a minute, however, she was able to identify the Defendant from both the back window and the front door. (Tr.22:8-14, 23:9-25, 24:1-9). Inv. Nelson said the entire transaction took approximately five (5) minutes or less. (Tr. 21:4-9). In fact, from her position at the front door, Inv. Nelson was able to see a full length view of the Defendant and testified that he was wearing a pair of plaid shorts and a white t-shirt. (Tr. 6:24-25).

On December 19, 2006, Inv. Nelson returned to the same apartment to make a narcotics buy from the Defendant. (Tr. 6:1-7). In fact, Inv. Nelson identified the residence and testified that all of the transactions– transactions from 2004 and 2006 – took place at that same apartment in Immokalee, Florida. (Tr. 17:2-6). The CI introduced her to the Defendant who then sold her crack cocaine from the back window of the apartment. (Tr. 6:9-11). Although Inv. Nelson testified that

this incident only took approximately fifteen seconds, she was still able to identify the Defendant. (Tr. 6:12-14).

According to Inv. Nelson, she was shown a photo of the Defendant prior to her participating in the buy and afterwards she was shown the same photo. (Tr. 24:12-19). However, Inv. Nelson testified that she recognized the Defendant from at least four previous contacts with him in 2004, 2006, and from numerous sightings in and around the Immokalee area. (Tr. 24:17, 31:2-16). Inv. Nelson stated that she only knew of one Charlie Byrd who was a reputed drug dealer in the Immokalee area. (Tr. 31:17-22).

What is more, Inv. Nelson testified that she could clearly see the Defendant's whole head even though the back of the apartment was dark and the window was partially covered by a blanket or curtain. (Tr. 35:11-25, 36:1-14). Inv. Nelson testified that the room was well lit and that she could see into the room. She stated that she could clearly see the Defendant's face in the window as he peered out and spoke to them during her narcotics buy in November and again in December of 2004. (Tr. 36:11-14). Inv. Nelson further testified that she did not give a description of the Defendant in her report because the Defendant was known to her and she was familiar with him. (Tr. 23:23-25, 24:1-9).

## DISCUSSION

Defendant argues that Inv. Nelson's identification of the Defendant was based upon the photograph shown to her before and after the narcotic transaction and is therefore, unduly suggestive. The Defendant further asserts any in-court identification will merely be the product of the suggestive out-of-court identification procedure. Therefore, he argues the identification should be suppressed. The Government responds that the photo identification was a routine procedure confirming that the

Defendant was the seller of narcotics and that the Defendant was already well known to Inv. Nelson from past contact.

To determine if an out-of-court identification is admissible, courts employ a two-step analysis. U.S. v. Diaz, 248 F.3d 1065, 1102 (11th Cir. 2001). First, the Court must determine whether the original identification procedure was unduly suggestive. Id. If the court determines that the original identification was unduly suggestive, then the court must consider the totality of the circumstances, and whether the identification was reliable based upon the circumstances presented. Id. (citing Neil v. Biggers, 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). To determine if the identification was reliable, the court will consider the following: (1) opportunity to view; (2) degree of attention; (3) accuracy of description; (4) level of certainty; and (5) length of time between the crime and the identification. Diaz, 248 F.3d at 1102 (citing Neil, 409 U.S. at 199). Although not dispositive of the issue of suggestiveness, showing only one photograph can be determined to be unduly suggestive in certain circumstances. Marsden v. Moore, 847 F.2d 1536, 1545-1546 (11th Cir. 1988).

In this instance, the Court finds that under the totality of the circumstances, the identification of the Defendant was reliable. Inv. Nelson made at least four (4) hand to hand purchases from the Defendant. (Tr. 31:2-16). Two (2) in 2004 and two (2) in 2006. (Tr. 31:2-16). The two (2) transactions in 2006, were approximately six weeks apart. Inv. Nelson testified that she had seen the Defendant on numerous other occasions, without making personal contact, and that he was well known to her and other law enforcement in the Immokalee area. (Tr. 24:17, 31:2-16, 31:17-22).

During the November 2, 2006, transaction Inv. Nelson went to the same apartment where she had purchased drugs from the Defendant in 2004. (Tr. 17:2-6). She saw the Defendant's whole head

at the back window and then viewed his entire body when he opened the front door to pass her the narcotics. (Tr.22:8-14, 23:9-25, 24:1-9). Again on December 19, 2006, Inv. Nelson, saw the Defendant's entire head as he made the narcotics transaction out the back window of the apartment. (Tr. 6:12-14). Inv. Nelson testified that the Defendant was well known to her and that she knew who he was when he leaned out of the window to make the transaction. (Tr. 23:23-25, 24:1-9, 24:17-19). Inv. Nelson stated that the light was sufficient to clearly see that the Defendant was the individual involved in the narcotics transactions in November and December of 2006. She did not use the single photograph to identify the Defendant, but instead used her own personal knowledge from previous contacts. Thus, the photos shown to Inv. Nelson immediately after the transactions were not for the purpose of identification but merely confirmed it was the Defendant who sold her the narcotics.

It is clear from the testimony that Inv. Nelson had sufficient time to view the Defendant during each transaction, she could identify the Defendant by sight, and she was familiar with both the apartment and the Defendant from previous contacts. Thus, under the totality of the circumstances presented in this case, the single photograph shown to her was not unduly suggestive. *See* U.S. v. Carter, 2005 WL 3556050 (M.D. Fla. Dec. 28, 2005) (denying the motion to suppress a single photo identification where the officer was certain of her identification of the defendant based upon her numerous previous contacts). Thus, based upon Inv. Nelson's frequent contacts and personal knowledge of the Defendant, the Court respectfully recommends that the single photograph identification was not unduly suggestive.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The Defendant Charles Byrd's Motion to Suppress Identification (Doc. #21) should be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended at Fort Myers, Florida, this __27th__ day of March, 2007.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record